the i2000 implanter, and the Japanese wafer manufacturers who ordered implanters, were privy to the material facts alleged herein to have been omitted and misrepresented by defendants in their public statements, alleged herein above.

37. Defendants were motivated to commit the fraud alleged herein so that the Company could complete the October common stock offering, which was critically important to Ibis because it needed working capital, and, at the same time, not scare off potential purchasers of the implanter while defendants desperately tried to negotiate with IBM concerning the patent issues involved in Ibis' efforts to sell the implanter. Defendant Reid, because of the public common stock offering, was not able to sell his personal shares of Ibis during the Class Period.

### Undisclosed Adverse Information

38. The market for Ibis' common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Ibis' common stock traded at artificially inflated prices during the Class Period. The artificial inflation continued until the time the market digested the truth regarding the operational and financial problems Ibis was experiencing and had failed to disclose and misrepresented during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Ibis' common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Ibis and have been damaged thereby.

39. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Ibis common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as alleged herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as detailed herein.

350228

40. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Ibis. These material misstatements and omissions created in the market an unrealistically positive assessment of Ibis and its prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus leading to their losses when the illusion was revealed, and the market was able to accurately value the Company.

### Applicability Of Presumption Of Reliance: Fraud-On-The-Market Doctrine

41. At all relevant times, the market for the common stock of Ibis' securities was an efficient market for the following reasons, among others:

(a) Ibis' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Ibis filed periodic public reports with the SEC and the NASDAQ;

(c) Ibis regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

350228

(d)     Ibis was followed by securities analysts employed by brokerage firms who wrote reports which entered the market.

42.     As a result of the foregoing, the market for Ibis' common stock promptly digested current information regarding Ibis from all publicly available sources and reflected such information in Ibis' stock price. Under these circumstances, all purchasers of Ibis' common stock during the Class Period suffered similar injury through their purchases of Ibis' common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Ibis who knew that those statements were false when made.

350228

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the Class Period, defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Ibis' common stock; and (iii) cause plaintiff and other members of the Class to purchase Ibis' common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ibis' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Ibis as specified herein.

350228

48. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ibis' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Ibis and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Ibis' common stock during the Class Period.

49. Reid's primary liability, and controlling person liability, arises from the following facts: (i) he was the most senior officer and Chairman of the Board of Ibis; (ii) he was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (iii) he was aware of the Company's dissemination of information to the investing public which he knew or recklessly disregarded was materially false and misleading.

50. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

51. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Ibis' common stock was artificially inflated throughout the Class Period. In ignorance of the fact that market prices of Ibis' common stock were artificially inflated, and relying directly or indirectly on the integrity

350228

of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period. Plaintiff and the other members of the Class acquired Ibis common stock during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and omissions, plaintiff and the other members of the class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Ibis, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Ibis common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of defendants' wrongful conduct plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Pursuant To Section 20(a) Of
### The Exchange Act Against Defendant Reid

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. Reid was and acted as a controlling person of Ibis within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of his high-level positions, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements

350228

filed by the Company with the SEC and disseminated to the investing public, Reid had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

57. In particular, Reid had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, Ibis and Reid each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his positions as a controlling person of Ibis, Reid is liable pursuant to Section 20(a) of the Exchange Act for Ibis' violation of Section 10(b) of the Exchange Act, as a direct and proximate result of which, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period,

**WHEREFORE**, plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

350228

(d)  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 11, 2004

By his attorneys,

SHAPIRO HABER & URMY LLP

_____
Theodore Hess-Mahan (BBO#557109)
75 State Street
Boston, MA 02109
Tel: (617) 439-3939
Fax: (617) 439-0134

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
Gregory Mark Nespole (GN 6820)
270 Madison Avenue
New York, New York 10016
(212) 545-4600

LAW OFFICES OF BRUCE MURPHY
265 Lloyds Lane
Vero Beach, Florida 32963
(772) 231-4202

LAW OFFICES OF ROBERT
ALTCHILER
590 Madison Avenue
21st Floor
New York, New York 10022
(212) 541-2422

Attorneys for Plaintiff

350228

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, GEORGE HARRISON, ("Plaintiff") declare the following claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 500 | IBIS | Buy | 12/5/03 | 16.20 |

Please list other transactions on a separate sheet of paper, if necessary.

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10 day of FEBRUARY, 2004.

_George Harrison_
Signature

GEORGE HARRISON
Print Name